IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BISHOP RINK HOLDINGS, LLC, )
d/b/a ICE MIDWEST, )
 )
                Plaintiff, )
 )
vs. )   Case No. 12-2715-JAR-KGG
 )
CIMCO REFRIGERATION, INC., )
 )
                Defendant. )
 )

**MEMORANDUM & ORDER ON
DEFENDANT'S MOTION TO COMPEL AND
PLAINTIFF'S MOTION TO QUASH SUBPOENA**

This case is before the Court on Defendant's motion requesting an Order compelling Plaintiff to produce certain documents (Doc. 38) and Plaintiff's motion requesting an Order to quash or modify a subpoena for documents from a third-party, Charlesworth & Associates, LC (Doc. 36). After reviewing the submissions of the parties, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Compel and **GRANTS** Plaintiff's Motion to Quash the subpoena issued to Charlesworth & Associates.

**BACKGROUND**

Plaintiff Bishop Rink Holdings, LLC, owned and operated Ice Midwest, an ice rink sports facility in Kansas City, Kansas. Defendant CIMCO manufactured,

1

installed, serviced, and repaired equipment and materials for ice rinks. On or about March 24, 2010, Plaintiff and Defendant entered into a contract whereby Defendant agreed to provide services to Plaintiff for $530,500. During the course of service, Plaintiff alleges that Defendant misrepresented the amount of corrosive inhibitor necessary to maintain the ice rinks which resulted in accelerated and undetected corrosion. Plaintiff also alleges that Defendant negligently performed services on the rink's cooling system which resulted in damage to pipes in the system. The ultimate result of the damage caused by the allegedly negligent service was the break-down of the rink's chiller on January 10, 2011, after which Plaintiff was unable to resume operation of the ice rink.

Defendant brings the present Motion to Compel to challenge privileges asserted by Plaintiff in their amended privilege log and objections asserted in response to Request for Production No. 5.[1] Plaintiff's brings the present Motion to Quash in regards to a subpoena served to Plaintiff's contracted risk manager, Charlesworth & Associates, LC.

## DISCUSSION

**A.    Work Product Doctrine**.

---

[1] Defendant provided an "Amended Privilege Log" from Plaintiff dated May 29, 2013 with the memorandum in support of its Motion to Compel (Doc. 39-1). With its response to the Motion to Compel, Plaintiff provided a Amended Privilege Log dated June 19, 2013 (Doc. 46-1 ). Plaintiff provided additional information relevant to the claims in the privilege by letter to Defendant on May 29, 2013 (Doc. 46-2). The parties have not raised the timeliness or revision of these documents as an issue.

The general limitation on the discovery of work product is described in Fed.R.Civ.P. 26(b)(3), which provides that, with limited exceptions, "documents and tangible things" prepared by a party or its agents "in anticipation of litigation or for trial" are not discoverable. ***U.S. Fire Ins. Co. V. Bunge North America, Inc.***, No. 05-2192-JWL-DJW, 2008 WL 2548129, at *5 (D. Kan. June 23, 2008). "The test for work-product protection turns on the primary purpose for which the documents were created." ***Marten v. Yellow Freight Sys., Inc.***, CIV.A.96-2013-GTV, 1998 WL 13244 (D. Kan. Jan. 6, 1998). In order for work product to apply, the document must have been created based upon a request for legal advice in response to a real and imminent threat of litigation. ***Raytheon Aircraft Co. V. U.S. Army Corps of Engineers***, 183 F. Supp. 2d 1280, 1288 (D. Kan. 2001). "Even the likely chance of litigation, does not give rise to the privilege." ***Id***.

Plaintiff has asserted work product doctrine for emails dated 7/23/2010 through 9/11/2011. Defendant challenges the assertion with the argument that because these emails were created ten months to nearly two years before this lawsuit was filed, the threat of litigation was not "real or imminent." (Doc. 38, at 2). Plaintiff asserts, however, that it hired its "previous counsel, who began providing legal advice regarding its claims on or before September 10, 2010" – less than two months after the first allegedly negligent act occurred on July 12, 2010. (Doc. 46, at 3.) Communications prior to hiring counsel pertained to legal

3

claims against Defendant and how to move forward in pursuing legal action. This indicates that there was more than a possibility of litigation and that the threat of litigation was real and imminent. Defendant also argues that the communication on March 11, 2011, indicating that Plaintiff considered Defendant to be the leading candidate for future work on the rink is evidence that there was no imminent threat of litigation. This correspondence is not convincing evidence that the threat of litigation was not imminent because impending litigation does not necessarily preclude two companies from continuing business relations. The Court therefore **DENIES** Defendant's motion requesting documents for which work product doctrine has been asserted.

      B.      **Attorney-Client Privilege**

Defendant has requested documents dated 9/01/2010, 1/31/2011, 2/09/2011, 2/17/2011, 4/25/2011, 5/17/2011 and the Risk Manager File (2010-2011), for which Plaintiff has asserted attorney-client privilege. Defendant's challenge to this privilege claim is that the privilege in communications to Plaintiff's attorney was waived because the communications were shared with "Tanner Shaw" and "Risk Manager." In a second amended privilege log, attached to Plaintiff's response to this motion, Plaintiff identifies participants in communications with counsel as James Charlesworth, "Previous Counsel," Lyn Shaw, Hal Edwards, and Chock Chapple.

In a letter to Defense counsel concerning this issue (Exhibit B, Response), Plaintiff's counsel identified these persons as the owner of the corporate owner of the skating rink (Lyn Shaw), the manager of the rink (Hal Edwards), and the managing agent of Plaintiff's insurer (Chock Chappel). Charlesworth is the outside risk management contractor. Tanner Shaw, Lyn Shaw's son, is an engineer who consulted on the technical issues.[2] While recognizing that a risk manager may be generally within the privilege, *White v. Graceland Coll. Ctr. For Prof. Dev. & Livelong Learning, Inc.*, 586 F.Supp.2d 1250 (D. Kan. 2008), Defendant urges a ruling that communications with an outside risk manager, as opposed to an employee, are outside the privilege. Defendant offers no authority or rationale for this distinction, and the Court sees no reason to make one. The persons listed are the Plaintiff's agents or share a "commonality of interest" such that the privilege is not waived. *High Point SARL v. Spring Nextel Corp*., 2012 WL 234024 at *1 (D. Kan. 2012).[3]

---

[2] The better practice, and that required by Rule 26(b)(5), would have been to explain the role of these persons in the privilege log itself to enable the Defendant to "assess the claim" of privilege. In this case because the information was conveyed to the Defendant by other means, a finding of waiver is not appropriate.

[3] The Court finds it unnecessary to decide whether in this or other circumstances, communications with a risk manager concerning legal issues might be entitled to attorney-client privilege protection without the involvement of counsel because counsel was involved in the communications at issue here. Other communications have been found protected as work product, which does not require attorney involvement.

The motion to compel production of documents logged as attorney-client communications is **DENIED**.

C.   **Insurer-Insured Privilege**.

According to Plaintiff's response there are no remaining disputes in regard to the issue of insurer-insured privilege. The parties have resolved the issue and no objections remain asserting "insurer-insured" privilege. (Doc. 46 at 7).

D.   **Factual Information in Withheld Documents**.

Defendant objects to the privilege log because it fails to identify whether the privileged communications include unprivileged factual information. Citing *Heavin v. Owens-Corning Fiberglass*, 2004 WL 316072 at *3-4 (D. Kan. 2004), Defendant argues that any portions of privileged communications which contain factual information are not privileged and must be produced. Defendant misapplies this principal in its argument.

In *Upjohn Company v. United States*, 499 U.S. 383 (1981) the Supreme Court explained the relevant principal in the context of extending the work product and attorney-client privileges to corporate employees beyond those who played a substantial role in directing the corporation's legal response. Answering the concern that expanding the protection would place too much information out of reach, the Court stated that the privilege "puts the adversary in no worse position than if the [privileged] communications had never taken place. The privilege

protects only communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." 499 U.S. at 395. For further explanation, the Court cited the following from the Eastern District of Pennsylvania:

> [T]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*City of Philadelphia, Pa. v. Westinghouse Elec. Corp*., 205 F. Supp. 830, 831 (D.C. Pa. 1962) (*cited* at 499 U.S. at 395-96). For example, if a party involved in a car accident was adjusting his radio at the time of the accident, he may be required to disclose that fact in his deposition. The fact does not *become* privileged because before the deposition he communicated the fact to his attorney. However, his communication of that fact to his attorney is privileged.

This Court does not read the opinions in *Heavin*, or the case it relied upon, *Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491 (D. Kan. 1997), as contrary to this principal. In those cases the Court essentially found the documents not to be privileged as attorney client communications or work product, but did redact some privileged communications from the non-privileged documents. The difference here is that the privilege log is adequate to establish that the documents

7

are work product or privileged, and the communication of discoverable facts within those documents remains privileged.[4] Discovery of the facts of this case may be had without examining the disclosure of these facts in a privileged communication. The Motion to Compel production of the attorney-client communications is **DENIED**.

### E. Request for Production No. 5

Defendant requests Plaintiff produce "any copy of contracts, memorandum, communications, emails, or other types of documentation between [Plaintiff] and a third party concerning or in any way relating to any maintenance or repair work (whether said work was actually performed or not) on the chiller system, the piping, cooling system, or the compressor room." Plaintiff objects that this request is without limitation, temporal or otherwise, is overly broad, and unduly burdensome.

An objection of unduly burdensomeness must be supported by a showing of facts in terms of time and expense involved in responding to a request. *Payless Shoesource Worldwide, Inc. v. Target Corp.*, CIV.A.05-4023-JAR, 2006 WL 6225139 (D. Kan. Nov. 17, 2006). Regarding overly broad objections: "relevance is broadly construed at the discovery stage of the litigation and a request for

---

[4] To the extent the protection is based on work product under Fed.R.Civ.P. 26(b)(3)(A), the defendant might overcome the protection by making a showing of substantial need under Rule 26(b)(3)(A). However, no such showing is attempted.

discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." *Smith v. MCI Telecommunications Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991).

The scope of this request is not overly broad. The time frame is not unlimited because Plaintiff owned the ice rink from 2000 until 2012. This adequately limits the temporal scope of this request. The request also adequately limits the scope of the request by specifying the type of documents to be produced and narrowing the subject matter of the documents to maintenance and repair work done "on the chiller system, the piping, cooling system, or the compressor room." It is apparent that the requested information is relevant to this case. The Court, therefore, does not find this request to be overly broad.

Likewise, the Court does not find the request to be unduly burdensome. Plaintiff did not make a showing of facts in terms of time and costs that would be incurred by complying with this request. Plaintiff's objections are therefore **overruled** and Defendant's motion is **GRANTED** for Request for Production No. 5.

Plaintiff stated in its response that, despite its objections to Request for Production No. 5, it has produced documents it deems to be relevant. (Doc. 46 at 8). In complying with this order, the Court instructs Plaintiff to produce *all*

documents responsive to this request regardless of whether Plaintiff finds them to be relevant.

**F. Plaintiff's Amended Motion to Quash Subpoena (Doc. 36)**.

Defendant served a subpoena to Plaintiff's risk manager, James Charlesworth, requesting documents, some for which Plaintiff has asserted work product doctrine and attorney-client privilege in their privilege log. To prevent production of these documents by a third party, Plaintiff has filed this motion to quash the subpoena. Plaintiff seeks to protect the same documents described in Plaintiff's privilege log, but in the possession of the third-party risk manager.

Rule 45(c)(3)(A)(iii) of the Federal Rules of Civil Procedure states that "the issuing court must quash a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies." As previously stated, the communications between Plaintiff and James Charlesworth that were identified in Plaintiff's privilege log are privileged under the work product doctrine. The Court, therefore, **GRANTS** Plaintiff motion to quash subpoena to the extent that it requests documents Plaintiff has identified in their privilege log.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel is **GRANTED in part** and **DENIED in part** and Plaintiff's Motion to Quash is **GRANTED** as more fully set forth above.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas on this 9th day of August, 2013.

                                                S/ KENNETH G. GALE
                                                HON. KENNETH G. GALE
                                                U.S. MAGISTRATE JUDGE